# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-10370

United States Court of Appeals
Fif h Circuit

**FILED**

March 15, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

JOE COLEMAN,

     Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:15-CR-69-1

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:*

Joe Coleman entered into a plea agreement for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). At sentencing, the district court found that Coleman's 2000 conviction for criminal sexual conduct in the second degree under Minnesota Statue section 609.343, subd. (1)(a), qualified him as a Tier III sexual offender. *See* U.S.S.G. § 2A3.5(a). Coleman appeals on the grounds that the Minnesota Statute criminalizes a broader range of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10370

conduct than the federal offense of abusive sexual contact and that the categorical approach applies to determine a defendant's tier under Guideline § 2A3.5.  Because Coleman was released from prison on January 29, 2017, we first consider whether his appeal is moot.  Finding that this court has jurisdiction, we AFFIRM Coleman's sentence.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 23, 2015, Coleman pleaded guilty to failure to register as a sex offender, as required under the Sex Offender Registration and Notification Act ("SORNA").  18 U.S.C. § 2250(a).  He did not waive his right to appeal in the plea agreement.

Coleman had to register pursuant to the SORNA because of his 2000 conviction for criminal sexual conduct in the second degree.  *See* Minn. Stat. § 609.343, subd. (1)(a).  That conviction stemmed from an incident in Anoka County, Minnesota.  While staying with a family, Coleman entered a ten-year-old girl's room, "laid in her bed, and [] began rubbing her legs, back, and buttocks."  The girl reported Coleman's actions to her mother, and he subsequently pleaded guilty.

The Presentence Report ("PSR") in the instant case initially determined that Coleman was a Tier I sex offender, with a base offense level of twelve.  *See* 42 U.S.C. § 16911(1)–(4); U.S.S.G. § 2A3.5(a).  With a two-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), his total offense level was ten.  His criminal history category of II resulted in a guidelines range of eight to fourteen months' imprisonment.

The Government objected to the PSR's determination that Coleman was a Tier I offender, arguing instead that Coleman qualified as a Tier III offender.  The probation officer agreed and modified the PSR.  As a Tier III offender, Coleman's base offense level was sixteen, though he received an additional one point reduction for acceptance of responsibility.  *Id.* §§ 2A3.5(a), 3E1.1(b).

2

No. 16-10370

Under the modified PSR, Coleman's new guidelines range was fifteen to twenty-one months' imprisonment.

In response, Coleman urged that under the categorical approach, the elements of his Minnesota conviction were broader than the elements of the federal crime of abusive sexual contact.  Therefore, his prior Minnesota conviction did not make him a Tier III offender.

The PSR answered Coleman's objections, stating that the two statutes were nearly identical.  It also looked to the events underlying Coleman's Minnesota conviction and determined that his actions qualified him as a Tier III offender.  The district court adopted as its findings the amended PSR, including its analysis of the Sentencing Guidelines.  Coleman received a sentence of twenty-one months' imprisonment, which was to run consecutive to any sentence received in a pending Minnesota case.  The district court also imposed a five-year term of supervised release.  Coleman timely appealed.

While his appeal was pending before this court, Coleman's term in federal custody expired on January 29, 2017.

## II. DISCUSSION

### 1. *Mootness*

The Bureau of Prisons released Coleman from custody on January 29, 2017, subject to a five-year supervised release term.  Because of his release from prison, we must first determine whether his appeal is moot. We conclude that it is not.

Mootness is a jurisdictional question that the court has a duty to raise sua sponte. *United States v. Villanueva–Diaz*, 634 F.3d 844, 848 (5th Cir. 2011) (citing *United States v. Lares–Meraz*, 452 F.3d 352, 354–55 (5th Cir. 2006) (per curiam)).  We review questions of jurisdiction de novo.  *Id.*  Both parties responded to our request for supplemental briefing on this issue.

No. 16-10370

Ordinarily, a defendant's "subjection to the terms of supervised release satisfy an ongoing consequence that is a sufficient legal interest to support [jurisdiction]." *Lares–Meraz*, 452 F.3d at 355. However, that general rule applies to non-mandatory terms of supervised release because the district court maintains discretion to terminate or modify the supervised release. *See* 18 U.S.C. § 3583(e); *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam). Coleman's conviction, in contrast, requires a mandatory five-year term of supervised release. 18 U.S.C. § 3583(k). We note a circuit split concerning whether a mandatory supervised release term may be modified or terminated under section 3583(e). *Compare United States v. Spinelle*, 41 F.3d 1056, 1057 (6th Cir. 1994) (holding that a mandatory supervision term does not prohibit a court from later modifying release under section 3583(e)) *with United States v. Lafayette*, 585 F.3d 435, 440 (D.C. Cir. 2009) (holding that a mandatory term cannot be shortened).

If Coleman's mandatory term cannot be modified, then that could render his appeal moot. We need not wade into this circuit split, however, because Coleman's classification as a Tier III sex offender carries with it collateral consequences that keep alive his case or controversy. *See Villanueva–Diaz* 634 F.3d at 848–49 (citing *Sibron v. New York*, 392 U.S. 40, 55 (1968)). For instance, a Tier I offender must keep his registration current for fifteen years, while a Tier III offender must do so for life. *Compare* 42 U.S.C. § 16915(a)(1) *with id* § 16915(a)(3). Additionally, Tier III offenders must appear for in-person verification more frequently than Tier I offenders. *Id.* § 16916.

Therefore, we hold that Coleman's appeal of his sentence is not moot.

### *2. Whether Minnesota's Statute is Comparable to the Federal Statute*

We next address whether Minnesota Statute section 609.343, subd. (1)(a), is "comparable to or more severe than" the federal offense of abusive

sexual contact.  *See* 42 U.S.C. § 16911(4)(A).  If the Minnesota statute is comparable to the federal crime of abusive sexual contact, our analysis need not go any further because Coleman would qualify as a Tier III offender under either the categorical or circumstance-specific approach.

"For properly preserved claims, this court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo*." *United States v. Cedillo–Narvaez*, 761 F.3d 397, 401 (5th Cir. 2014).

SORNA, enacted in 2006, instituted a nationwide sex offender registry "to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901.  When passing SORNA, "Congress cast a wide net to ensnare as many offenses against children as possible." *United States v. Gonzalez–Medina*, 757 F.3d 425, 431 (5th Cir. 2014) (quoting *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010) (en banc)).  The purpose of SORNA was generally "to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations." National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38030 (July 2, 2008).  SORNA requires that a sex offender "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a).  The base offense level an offender receives if convicted for failing to comply depends on his sex offender tier, which is based on the severity of his sex offense.  *See id.* § 16911(2)–(4); U.S.S.G. § 2A3.5(a) & cmt. 1.

Although we are limiting our analysis to a comparison of the elements of the two crimes, it is not necessary that the two crimes be identical.  *See* 42. U.S.C. § 16911(4).  The plain language of SORNA requires only that the

No. 16-10370

offenses be "comparable." *Id.* Courts have stated that, given SORNA's broad purpose, a comparable statute can be "slightly broader" than the federal crime. *United States v. Forster*, 549 F. App'x 757, 769 (10th Cir. 2013); *see also United States v. Morales*, 801 F.3d 1, 7–8 (1st Cir. 2015) (stating that the "comparable to" language may provide the court with "some flexibility when examining [] offenses").

The district court concluded that Coleman's Minnesota conviction constituted a Tier III offense because it was "comparable to or more severe than . . . abusive sexual contact (as described in section 2244 of title 18) against a minor who has not attained the age of 13 years." 42 U.S.C. § 16911(4)(A). Abusive sexual contact is knowing sexual contact, when certain other circumstances are present. 18 U.S.C. § 2244. In turn, the federal statute defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(3).

Sexual conduct in the second degree under Minnesota law involves "sexual contact with another person" when "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Minn. Stat. § 609.343, subd. (1)(a). Minnesota defines sexual contact as, *inter alia*, "the intentional touching by the actor of the complainant's intimate parts," when such an action is done "with sexual or aggressive intent." Minn. Stat. § 609.341, subd. (11)(a). Coleman's argument that the Minnesota statue is broader is limited to the intent element.

On their faces, the elements of the two statutes are nearly identical. Yet, Coleman insists that "sexual or aggressive intent" is materially broader than the "intent to abuse . . . or gratify the sexual desire of any person." *Compare* 18 U.S.C. § 2246(3) *with* Minn. Stat. § 609.341. He cites to two Minnesota

6

No. 16-10370

appellate court cases where the defendants acted only with aggressive, but not sexual intent. In *State v. Ahmed*, 782 N.W.2d 253, 257 (Minn. App. 2010), the court sustained a conviction under the statute when an individual had burned a three year old "on multiple parts of his body, including his face, back, shoulder, abdomen, and penis." The court looked to the plain text of the statute and concluded that the severe "abuse" that Ahmed committed satisfied the intent prong under the statute because he acted aggressively. *Id.* at 256, 262. In another case, the defendant pleaded guilty under the Minnesota statute for severely beating his three-year-old stepson with a belt, which resulted in lacerations to his penis and scrotum. *State v. Chandler*, 2013 WL 5612549, at *1 (Minn. App. Oct. 15, 2013). The *Chandler* court also held that "[b]ecause 'sexual' and 'aggressive' are stated as alternatives, either is sufficient." *Id.* at *2 (quoting *State v. Austin*, 788 N.W.2d 788, 792 (Minn. App. 2010)). In comparison, the Government cannot point to any case in which an individual was punished under the federal statute for non-sexual conduct.

Still, after examining both statutes, we are convinced that they are, at a minimum, comparable. The intent to "abuse" in 18 U.S.C. § 2246(3) is analogous to the aggressive intent required by the Minnesota statute. Both courts that applied Minnesota Statute section 609.343 to non-sexual activity characterized the behavior as "abuse," and each involved horrific injuries to children's sexual organs. *See Ahmed*, 782 N.W.2d at 256; *Chandler,* 2013 WL 5612549 at *2. In the cases cited by Coleman, the courts found that the individuals had the specific intent to touch the children's genitals and cause harm to the child through that touching. *See Ahmed* 782 N.W.2d at 262; *Chandler*, 2013 WL 5612549 at *3. Abuse is "physical or mental maltreatment, often resulting in mental emotional, sexual, or physical injury." *Abuse*, Black's Law Dictionary (10th ed. 2014). Although the Government has not pursued an individual for purely aggressive conduct under 18 U.S.C. § 2244, that is not

7

dispositive to our analysis.  *See Forster*, 549 F. App'x at 769 (stating that a comparable statute may be "slightly broader" than the federal statute).

Accordingly, even if the Minnesota statute has been applied to a slightly broader range of conduct than the federal statute, we conclude that the elements of the Minnesota statute are "comparable or more severe than" the federal crime of criminal sexual abuse.  *See* 42 U.S.C. § 16911(4)(A).  The similarity between the elements in both statutes convinces us that the district court did not err when it concluded that the Minnesota statute fit 42 U.S.C. § 16911(4)(A)'s definition of a Tier III offense.

## III. CONCLUSION

Having determined that the district court properly classified Coleman as a Tier III offender, we AFFIRM his sentence.