# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 11, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20238

———————

United States of America,

*Plaintiff—Appellant*,

*versus*

Nima Nazerzadeh,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CR-30-1

———————————————————

Before King, Smith, and Elrod, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

The government appeals the district court's order granting Nima Nazerzadeh's request to terminate his obligation to register as a sex offender. Because the unambiguous language of the Sex Offender Registration and Notification Act deems Nazerzadeh a tier II sex offender, and because that status demands that his registration continues, we REVERSE.

I

Nazerzadeh pleaded guilty to two counts of distribution of child pornography and one count of possession of child pornography involving the

No. 22-20238

sexual exploitation of minors.  He was sentenced to 60 months in prison on each count, to run concurrently.  The district court also imposed a life term of supervised release.

After serving his sentence, Nazerzadeh was released from prison in August 2010.  And he successfully completed his sex offender treatment. Since his release, he has maintained a clean record and complied with his registration requirement.

In March 2022, Nazerzadeh moved to terminate his federal obligation to register as a sex offender.  As legal authority, he cited 34 U.S.C. § 20915(b), which allows "a tier I sex offender" to obtain reduction of the registration period if the offender maintained a "clean record" for 10 years. The government opposed the motion, arguing that Nazerzadeh's conviction for distribution of child pornography makes him a tier II sex offender, and tier II sex offenders are required to register for 25 years.  Accordingly, the government asserted that: (1) SORNA did not provide a private cause of action to seek a reduction in the term of registration; and (2) in the alternative, SORNA did not provide for a reduction for tier II sex offenders.

Without explanation, the district court granted Nazerzadeh's motion and relieved him of his federal obligation to register as a sex offender.  The government timely appealed.  On appeal, the government re-urged only its second argument, that § 20915 does not provide for a reduction for tier II sex offenders.  Accordingly, we address only that argument.

II

In general, we review findings of fact for clear error and conclusions of law *de novo*.  *United States v. Huerta*, 994 F.3d 711, 714 (5th Cir. 2021).  We review SORNA's registration requirement *de novo*.  *United States v. Schofield*, 802 F.3d 722, 725 (5th Cir. 2015).

No. 22-20238

## III

As to tier I sex offenders, SORNA provides for a 5-year reduction of the registration period if the registrant maintained "a clean record" for 10 years. 34 U.S.C. § 20915(b). As to tier II sex offenders, however, SORNA does not allow for any reduction. § 20915(b)(3). The government does not dispute that Nazerzadeh has maintained a clean record for the prescribed period. It contends, however, that Nazerzadeh is a tier II offender, and so he is not entitled to a reduction. But if Nazerzadeh is correct that he is properly classified as a tier I offender, then a 5-year reduction (which SORNA authorizes for tier I offenders) would terminate his obligation because he has fulfilled more than 11 years of the 15-year mandatory registration.

Given this background, the determinative question is whether Nazerzadeh is a tier I or tier II sex offender. As to tier I and tier II classifications, SORNA provides as follows:

> (2) Tier I sex offender
>
> The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.
>
> (3) Tier II sex offender
>
> The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—
>
> > (A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:
> >
> > > (i) sex trafficking (as described in section 1591 of Title 18);
> > >
> > > (ii) coercion and enticement (as described in section 2422(b) of Title 18);

No. 22-20238

> > (iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a))1 of Title 18;
> >
> > (iv) abusive sexual contact (as described in section 2244 of Title 18);
>
> (B) involves—
>
> > (i) use of a minor in a sexual performance;
> >
> > (ii) solicitation of a minor to practice prostitution; or
> >
> > (iii) production or distribution of child pornography; or
>
> (C) occurs after the offender becomes a tier I sex offender.

34 U.S.C. § 20911.

In interpreting § 20911(3) (tier II classification), the government argues for a disjunctive reading of the statute, whereas Nazerzadeh argues for a conjunctive reading. Under the government's reading, conditions (3)(A), (3)(B), and (3)(C) are each independently sufficient for tier II classification. In contrast, under the Nazerzadeh's reading, none of the conditions are independently sufficient, and (3)(A) is necessary. Or, as he put it, "to be a Tier II offender, the offense must be one listed in (3)(A) that *involves* (3)(B) or (3)(C); not an offense listed in (3)(A) *or* (3)(B) or (3)(C)" (emphasis in original).

Here, the parties' briefs indicate that condition (3)(B)(iii)—and only that condition—is satisfied. And so, the choice between a disjunctive or conjunctive reading is outcome determinative. If we adopt the disjunctive reading, then Nazerzadeh is a tier II offender. But under the conjunctive reading, he would not qualify as a tier II offender because (3)(A) is not satisfied, and thus he would be considered as tier I by default.

No. 22-20238

A

We hold that the disjunctive reading is the correct interpretation of the statute. The "Supreme Court has noted that 'or' is 'almost always disjunctive.'" *Cascabel Cattle Co., L.L.C. v. U.S.*, 955 F.3d 445, 451 (5th Cir. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018)). The word "indicates alternatives and requires that those alternatives be treated separately." *Dacostagomez-Aguilar v. U.S. Atty. Gen.*, 40 F.4th 1312, 1316 (11th Cir. 2022) (citation and quotation marks omitted). Thus, as a matter of ordinary English, when a provision requires "A, B, or C" it expresses a "disjunctive list, [where] at least one of the three is required, but any one (or more) of the three satisfies the requirement." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116 (2012); *see* 73 Am. Jur. 2d Statutes § 139 (observing that when a "conjunction is placed immediately before the last of the series, the same connective is understood between the previous members"); *see also United States v. Palomares*, 52 F.4th 640, 643 (5th Cir. 2022) ("An em dash signifies that the clause that immediately precedes the dash applies to all of the items that follow." (alterations, quotation marks, and citation omitted).).

And our precedent supports this presumption. In *Navarro*, for example, we observed that "an offender qualifies as tier II if his sex offense was [encompassed under § 20911(3)(A)(iv)]." *United States v. Navarro*, 54 F.4th 268, 278 (5th Cir. 2022) (citing 34 U.S.C. § 20911(3)(A)(iv)); *see also United States v. Walker*, 931 F.3d 576, 578 (7th Cir. 2019) (Barrett, J.) (similarly holding that "a person is a tier II sex offender if his offense [satisfies § 20911(3)(A)(iv)]"). In holding so, we understood subsection (3)(A) as independently sufficient for tier II classification. That understanding is consistent with the disjunctive reading.

5

Our decision in *Coleman* likewise supports a disjunctive reading. *United States v. Coleman*, 681 F. App'x 413 (5th Cir. 2017). *Coleman* addressed whether a sex offender qualifies as tier III under 34 U.S.C. § 20911(4)(A) (previously 42 U.S.C. § 16911(4)(A)). Like § 20911(3) (defining tier II), the text of § 20911(4) (defining tier III) has an "(A), (B), or (C)" structure. The subsection reads as follows:

> (4) Tier III sex offender
>
> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and—
>
> > (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
> >
> > > (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> > >
> > > (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;
> >
> > (B) involves kidnapping of a minor (unless committed by a parent or guardian); or
> >
> > (C) occurs after the offender becomes a tier II sex offender.

34 U.S.C. § 20911(4).

The *Coleman* panel affirmed the district court's tier III categorization because the defendant satisfied (4)(A). In its reasoning, the panel never discussed either (4)(B) or (4)(C), indicating that it adopted a disjunctive interpretation by reading (4)(A) as independently sufficient. Given that § 20911(4) has the exact same structure as § 20911(3), *Coleman* supports a disjunctive reading of § 20911(3). 681 F. App'x 413; *see also Walker*, 931 F.3d

at 576 n.1 (Barrett, J.) (recognizing that there are multiple "ways to qualify as a Tier II or Tier III offender").

B

Nazerzadeh contends that we should adopt a conjunctive reading because the end of subsection (3)(A) does not include the conjunction "or." In other words, he contends that, if Congress had wanted to provide three different alternatives for tier II classification, the statute would have stated "(3)(A), or (3)(B), or (3)(C)." Because the first "or" is "missing," Nazerzadeh concludes that, "to be a Tier II offender, the offense must be one listed in (3)(A) that *involves* (3)(B) or (3)(C); not an offense listed in (3)(A) *or* (3)(B) or (3)(C)" (emphasis in original).

We are unpersuaded by this argument. To be sure, some legal drafters, "through abundant caution, put a conjunction between all the enumerated items." Reading Law, at 118. For example, a provision may state:

> The seller shall provide:
>
> (a) a survey of the property; and
>
> (b) the surveyor's sworn certificate that the survey is authentic and, to the best of the surveyor's knowledge, accurate; and
>
> (c) a policy of title insurance showing the boundaries of the property; and
>
> (d) a plat showing the metes and bounds of the property.

*Id.* But the use of multiple conjunctions there (a technique called "*polysyndeton*") "does not convey a meaning different from that of the identical phrasing minus the *ands* at the end of (a) and (b)." *Id.*; *see also Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882, 892 n.8 (10th Cir. 2020). Moreover, this technique is disfavored because "over time, it [may]

7

cast doubt on the meaning conveyed by the use of syndeton [*i.e.*, the use of a conjunction between the last elements only]." Reading Law, at 118. And so, here, although the statute could have used multiple "ors" by stating "(3)(A), or (3)(B), or (3)(C)," doing so would not convey a meaning different from the current formulation. As a matter of ordinary English, when a provision requires "A, B, or C" it expresses a "disjunctive list, [where] at least one of the three is required, but any one (or more) of the three satisfies the requirement." *Id.* at 116.

Next, Nazerzadeh contends that the Third Circuit's decision in *Hodge* supports his position. *United States v. Hodge*, 321 F.3d 429 (3d Cir. 2003). In *Hodge*, the Third Circuit addressed whether a "wax-and-flour" mixture is a "controlled substance analogue" within the meaning of 21 U.S.C. § 802(32)(A). *Id.* at 431. The relevant provisions state:

> [With certain exceptions not relevant here,] the term "controlled substance analogue" means a substance—
>
> > (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> >
> > (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> >
> > (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

The government there proposed a disjunctive interpretation, namely, that a substance is a controlled substance analogue if it satisfies any one of clauses (i), (ii), or (iii).  In contrast, the defendants argued that "a controlled substance analogue must satisfy both clause (i) and either clause (ii) or (iii)." *Hodge*, 321 F.3d at 433.  Under the government's proposed reading, the mixture of candle wax and flour that the defendants sold would be a "controlled substance analogue" under subpart (iii) because the defendants "represent[ed]" their product as crack cocaine.  *Id.*  In contrast, under the defendants' conjunctive interpretation, the mixture would not be a controlled substance analogue because it does not satisfy clause (i).

Relying on the absurdity canon and legislative history, the *Hodge* panel agreed with the defendants' conjunctive reading.  The court observed that under a disjunctive reading, powdered sugar or a mixture of candle wax and flour "would be an analogue if a defendant represented that it was cocaine." *Id.* at 434.  And the court reasoned that the "treatment of candle wax and flour, no matter how it is marketed, as a schedule I controlled substance is an 'absurd' result of the kind our canons of construction instruct us to avoid." *Id.* at 439.  Pointing to legislative history, the panel noted that "Congress did not intend to include innocuous substances such as wax and flour within its definition of controlled substance analogues." *Id.* at 438–39. Thus, the panel adopted a conjunctive interpretation and reversed the defendants' convictions that were based on a disjunctive reading of the statute. *Id.* at 439.

Even though *Hodge* addressed a completely different statute, Nazerzadeh contends that the structure of the statute in *Hodge* is similar to the structure of the statute at issue here.   And so, he asserts that we should follow the panel in *Hodge* and adopt a conjunctive reading.  We refuse to do so, however, for three reasons.

First, we have rejected *Hodge*'s conjunctive reading of 21 U.S.C. § 802(32)(A) in *United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990). *See United States v. Roberts*, 363 F.3d 118, 121 (2d Cir. 2004) (observing that the Fifth Circuit in *Granberry* adopted a disjunctive test as to 21 U.S.C. § 802(32)(A)).

Second, we are not persuaded by *Hodge*'s reasoning because it relies on legislative history. "We are reluctant to rely on legislative history for the simple reason that [it is] not law." *In re Ultra Petroleum Corp.*, 51 F.4th 138, 148 n.10 (5th Cir. 2022) (quoting *In re DeBerry*, 945 F.3d 943, 949 (5th Cir. 2019)). And when we do consider legislative history, it is only because the text at issue is ambiguous. *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 492 (5th Cir. 2004). Because there is no such ambiguity here, "we are not permitted to look to the legislative history." *Id.* at 492.

But even assuming *arguendo* that we can look to the purpose of the statute, it does not support Nazerzadeh's conjunctive reading. We have observed that "Congress enacted SORNA to 'protect the public from sex offenders and offenders against children' and to 'establish[] a comprehensive national system for the registration of those offenders.'" *United States v. Gonzalez-Medina*, 757 F.3d 425, 432 (5th Cir. 2014) (alteration in original) (quoting 42 U.S.C. § 16901). And "SORNA's language confirms 'that Congress cast a wide net to ensnare as many offenses against children as possible.'" *Id.* (quoting *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir.2010) (*en banc*)). Thus, to the extent that purpose serves as context, it supports a disjunctive, more inclusive reading, of the statute. *See United States v. Sharp*, 62 F.4th 951, 953 (5th Cir. 2023) (observing that "words are given meaning by their context, and context includes the purpose of the text," but purpose "is to be described as concretely as possible") (quoting Reading Law, at 56–57).

No. 22-20238

And finally, unlike in *Hodge*, the absurdity canon is inapplicable here. Nazerzadeh contends that a disjunctive reading of the tier II classification would lead to an absurd result because it would mean that (3)(C) is individually sufficient for tier II categorization. If (3)(C) is individually sufficient, he contends that a tier I offender would fall into tier II if convicted of a *any offense* "punishable by imprisonment for more than 1 year," if the offense "occurs after the offender becomes a tier I sex offender." 34 U.S.C. § 20911(3)(C). But this argument relies on a misinterpretation. The relevant provision reads:

> "The term 'tier II sex offender' means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and . . . (C) occurs after the offender becomes a tier I sex offender."

Given that SORNA is concerned with sex offenses, context would indicate that the term "offense" specifically refers to a sex offense, not just any offense. And so, under (3)(C), a tier I offender would be elevated into a tier II category when he commits a sex offense (not just any offense) that is "punishable by imprisonment for more than 1 year," if the offense "occurs after the offender becomes a tier I sex offender." § 20911(3)(C). We see nothing absurd about that outcome as it merely reflects Congress's decision to lengthen the registration period for repeat sex offenders.

\*   \*   \*

As a matter of ordinary English, when a provision requires "A, B, or C" it expresses a "disjunctive list, [where] at least one of the three is required, but any one (or more) of the three satisfies the requirement." Reading Law, at 116; 73 Am. Jur. 2d Statutes § 139. We may consider departing from that general presumption only when "context dictates otherwise." *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1353 (11th Cir. 2022). Context does not dictate otherwise here. Thus,

11

we agree with the government that 34 U.S.C. § 20911(3)(A)–(C) should be read disjunctively, whereby (3)(A), (3)(B), and (3)(C) are each independently sufficient for tier II classification.[1]

Because he was convicted for distribution of child pornography, Nazerzadeh's crime falls under § 20911(3)(B)(iii), and so he is a tier II sex offender. Consequently, he "shall" register for 25 years from the date of his release from prison. 34 U.S.C. § 20915(a)(2) (stating that "[a] sex offender shall keep the registration current for . . . 25 years, if the offender is a tier II sex offender"); *id.* (stating that the registration period "exclud[es] any time the sex offender is in custody or civilly committed"). Furthermore, he is not entitled to any reduction of the required registration period under SORNA. 34 U.S.C. § 20915(b) (providing reduction for tier I and tier III sex offenders, but not tier II). Accordingly, the district court's grant of Nazerzadeh's motion to terminate his federal obligation to register as a sex offender is REVERSED.

---

[1] Agency deference does not apply here because the statute is unambiguous. *See Huntington Ingalls, Inc. v. Dir., Off. of Workers' Compen. Programs, U.S. Dept. of Lab.*, 70 F.4th 245, 253 (5th Cir. 2023). And even if the statute is ambiguous, we would have applied the rule of lenity rather than defer to the agency's interpretation. *See Cargill v. Garland*, 57 F.4th 447, 468 (5th Cir. 2023) (holding that agency deference "does not apply [when] the statutory language at issue implicates criminal penalties"); *United States v. Hoang*, 636 F.3d 677, 682 (5th Cir. 2011) ("[T]o the extent SORNA may be ambiguous, the rule of lenity requires that we interpret the statute in [the Defendant's] favor.").