# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2019

—————

No. 18-60079

—————

Lyle W. Cayce
Clerk

CLEAN WATER ACTION; ENVIRONMENTAL INTEGRITY PROJECT; SIERRA CLUB; WATERKEEPER ALLIANCE, INCORPORATED; PENNENVIRONMENT, INCORPORATED; CHESAPEAKE CLIMATE ACTION NETWORK; PHYSICIANS FOR SOCIAL RESPONSIBILITY, CHESAPEAKE, INCORPORATED; PRAIRIE RIVERS NETWORK,

Petitioners

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, Acting Administrator, United States Environmental Protection Agency,

Respondents

—————

Petition for Review of an Order of the
Environmental Protection Agency

—————

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Through notice-and-comment rulemaking, the Environmental Protection Agency ("EPA") reviewed and decided to revise[1] the earliest

---

[1] The original rule was titled: "Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category," 80 Fed. Reg. 67838 (Nov. 3, 2015) (the "2015 Rule"). The revision, which is the subject of this case, is titled: Postponement of Certain Compliance Dates for the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 82 Fed. Reg. 43,494 (Sept. 18, 2017) (the "Postponement Rule").

No. 18-60079

compliance dates for new, stringent BAT ("best available technology economically achievable") effluent limitations and PSES ("pretreatment standards for existing source") concerning two waste streams from steam electric power generating point sources that had previously been promulgated in a 2015 Rule.

More specifically, the agency postponed for two years only the earliest compliance dates mandated by the 2015 Rule for flue gas desulfurization (FGD) wastewater and bottom ash transport water, while (a) retaining the 2015 Rule's BAT limitations and pretreatment standards for other waste streams from such power plants, and (b) not altering either the last date for compliance (December 2023) or, pending reconsideration, the substantive limits required by the 2015 Rule for the two postponed stream modifications. A consortium of environmental groups has challenged the postponement, while EPA and the intervenor, Utility Water Act Group ("UWAG"),[2] defend the Postponement Rule. We conclude that the EPA had statutory authority to pass this tailored rule, the agency explained its decision adequately, its decision was reasonable, and it was thus neither arbitrary nor capricious. The petition for review is DENIED.

## BACKGROUND

The 2015 Rule represented the culmination of ten years' work by EPA to update steam electric power generating plant standards for compliance with the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, that had been in place since 1982. In that Rule, the agency, among other things, defined much more stringent BAT limits and pretreatment standards for seven defined wastestreams. Recognizing that power plants would need substantial lead

---

[2] UWAG is an ad hoc voluntary group of 145 individual energy companies and three national energy trade associations.

time to plan, fund, and build necessary new facilities, the agency mandated in the 2015 Rule an earliest compliance date of November 2018 and delegated to permitting authorities the flexibility to approve individual point source compliance as feasible over a period extending until the end of 2023.

Four lawsuits challenging the 2015 Rule were soon filed in the federal courts.[3] The petitions were consolidated by the Judicial Panel on Multidistrict Litigation and transferred to this court.[4] During these preliminaries, UWAG, later supplemented by the Small Business Administration's Office of Advocacy, submitted petitions asking EPA to reconsider the entire 2015 Rule and suspend its approaching deadlines.[5] Among other things, these petitions raised substantial questions, based on newly discovered information, about the extraordinary costs of implementing the 2015 Rule and the infeasibility of EPA's proposed technology as applied to certain power plants. Taking these petitions seriously, EPA's Administrator determined that it was appropriate and in the public interest to reconsider the 2015 Rule.

After an initial stay, a formal rulemaking procedure ensued, the notice of which generated thousands of written comments, and the agency conducted a public hearing on July 31, 2017. In the end, EPA decided to adhere to most aspects of the 2015 Rule. EPA left in place the legacy wastewater limitations, which are BAT limitations that apply to each of the regulated wastestreams

---

[3] The cases were originally captioned as: *Waterkeeper Alliance, Inc. et al v. EPA, et al.* (2nd Cir. No. 15-3773); *Sw. Elec. Power Co., et al. v. EPA, et al.* (5th Cir. No. 15-60821); *Union Elec. Co., et al. v. EPA, et al.* (8th Cir. No. 15-3658), and *Sierra Club v. EPA* (9th Cir. No. 15-73578).

[4] *See* United States Judicial Panel on Multidistrict Litigation, Order MCP No. 136 (December 8, 2015).

[5] UWAG Petition for Reconsideration, Index.12844, JA836; SBA Petition for Reconsideration, Index.12848, JA1064.

beginning on the effective dates set out in the 2015 Rule; the new and more stringent limitations and quantitative standards (*i.e.*, the permissible amount of discharges); and the latest compliance date for NPDES permitting authorities to impose those limitations.[6] *See generally,* Postponement Rule, 82 Fed. Reg. at 43,494. But the agency also decided it must reconsider the 2015 Rule's regulations governing two wastestreams (FGD wastewater and bottom ash transport water) in light of "new information not contained in the record for the 2015 Rule." *Id.* at 43,496. As support for reconsideration, EPA cited "the inherent discretion the Agency has to reconsider past policy decisions consistent with the CWA and other applicable law." *Id.* EPA's expressed purpose for postponing the earliest effective compliance dates for these wastestreams during reconsideration was to "prevent the potentially needless expenditure of resources during a rulemaking that may ultimately change the 2015 Rule . . . ." *Id.* The agency, however, specifically declined to forecast whether, after reconsideration, it will substantially revise the 2015 Rule.[7]

## STANDARD OF REVIEW

The standard of review here is deferential, focusing on whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923,

---

[6] The Postponement Rule extended the "as soon as possible" date for these two effluent limitations by two years, from November 1, 2018 until November 1, 2020. Postponement Rule, 82 Fed. Reg. at 43,496. The Postponement Rule did not modify the "no later than" date of December 31, 2023, since EPA had no reason to believe that date was driving compliance costs. *Id.* at 43,496.

[7] At oral argument, the court was informed that, in response to the uncertainty pending reconsideration, permitting authorities may continue to require compliance with the 2015 Rule as to these wastestreams while extending the deadlines.

No. 18-60079

934 (5th Cir. 1998). The reviewing court may not "substitute its judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 824 (1971).

EPA must provide a reasoned explanation for its revisions and follow the same process to revise a rule as it used to promulgate it. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015). Even "a decision based on an administrative record of less than ideal clarity will be upheld if the agency's path may reasonably be discerned." *United States v. Garner*, 767 F.2d 104, 118 (5th Cir. 1985). This court, however, "'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

In this instance, EPA went out of its way to issue a narrow reconsideration decision, leaving intact the bulk of the 2015 Rule, and to substantiate its course of action legally through notice-and-comment rulemaking.[8] According to the Petitioners, that was not enough. Petitioners fault the EPA for issuing the Postponement Rule without legal authority because they argue it is an unauthorized stay or the "functional equivalent" of a stay of the 2015 Rule; for failing to consider mandatory statutory factors before promulgating a revision; and for failing to comply with what they take to be a three-year ELG compliance deadline in the CWA. We address each of

---

[8] EPA's earlier stay applied to five wastestreams, since the EPA was considering revising compliance dates for the limitations and standards for all of them. *See* EPA, Postponement of Certain Compliance Dates for Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 82 Fed. Reg. 19,005 (Apr. 25, 2017). Reflecting EPA's thoughtful and narrow decision, the Postponement Rule challenged here applies only to the FGD and ash transport water ELGs since the EPA ceased reconsidering the limitations and standards applicable to the other wastestreams.

these arguments in turn.

**A. Whether the Postponement Rule effects a "stay" or its "functional equivalent" concerning the 2015 Rule.**

Petitioners do not challenge EPA's statutory authority to revise the 2015 Rule's ELGs because the CWA explicitly authorizes EPA to revise previously-promulgated rules. *See* 33 U.S.C. §§ 1311(d), 1314(b), (g)(1), (m)(1)(A), 1317(b)(2). Instead, they contend that the Postponement Rule was not a revision, but either a stay or the functional equivalent of a stay of the earlier Rule.

The Postponement Rule is not a stay. In so characterizing it, Petitioners misstate the agency's position and rely on inapposite legal authority.[9] EPA has consistently justified the Postponement Rule as a revision under both its inherent authority to reconsider past decisions and as an action authorized under the Clean Water Act. *See* Postponement Rule, 82 Fed. Reg. at 43,496 ("Agencies have inherent authority to reconsider past decisions and to revise, replace or repeal a decision to the extent permitted by law and supported by a reasoned explanation . . . Particularly relevant here, the CWA expressly authorizes EPA to revise effluent limitations and standards.") (citations omitted). Petitioners chiefly cite cases discussing administrative stays under the APA. But, as they admit, although EPA's earlier stay relied on Section 705

---

[9] Of course, EPA may not offer *post-hoc* rationales justifying its decision, and so careful attention must be paid to the express rationale offered in the rulemaking. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50, 103 S. Ct. at 2870. But Petitioners offer only snippets of EPA language taken out of context to imply that EPA did not consider the Postponement Rule to be a revision of the 2015 Rule. *See, e.g.*, Postponement Rule, 82 Fed. Reg. at 43,496 ("EPA has decided to undertake a new rulemaking, which may result in substantive changes to the 2015 Rule"); *see also id.* at 43,497 (stating that in "the next rulemaking," EPA would consider issues raised by petitions for reconsideration of the ELG Rule, "in conjunction with the statutory factors for determining BAT for these waste streams"); *id.* at 43,498 (EPA indicating that it "anticipates that [its] next rulemaking will necessarily address compliance dates in some fashion.").

No. 18-60079

of the APA, EPA did not cite the APA as authorizing this Postponement Rule. EPA at all times claimed to be *revising* the prior rule. Consequently, cases like *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) and *Air Alliance Houston v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018) (per curiam), cited by Petitioners, are inapposite because they interpreted the stay provision in the Clean Air Act and the APA, neither of which is germane to this case.[10]

EPA correctly surmised that, in addition to its statutory authority to revise rules under the CWA, administrative agencies possess the inherent authority to revise previously-promulgated rules, so long as they follow the proper administrative requirements and provide a reasoned basis for the agency decision. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, 129 S. Ct., 1800, 1811 (2009) (recognizing that the Administrative Procedure Act "makes no distinction . . . between initial agency action and subsequent agency action undoing or revising that action"); *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42, 103 S Ct. at 2866 ("[W]e fully recognize that 'regulatory agencies do not establish rules of conduct to last forever,' and that an agency must be given ample latitude to 'adapt their rules and policies to the demands of changing circumstances.'") (citation omitted); *Perez*, 135 S. Ct. at 1206 (agencies may amend rules provided that they "use the same procedures when they amend . . . a rule as they used to issue the rule in the first instance"). In

---

[10] Petitioners also argue that the CWA, unlike the Clean Air Act ("CAA"), contains no provision for a stay pending reconsideration and this court should interpret the silence of the CWA in light of the CAA. To be sure, agencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 471 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). But EPA implemented the Postponement Rule through the rulemaking process, not as a discretionary stay. Petitioners cite no authority suggesting that statutory grants of power must be read as narrowly as possible, nor do they cite any authority suggesting that the EPA's power to revise under the CWA does not extend to effective dates and compliance dates.

7

No. 18-60079

accord with these authorities, EPA issued the Postponement Rule following notice-and-comment rulemaking after evaluating legitimate concerns about compliance costs and achievability.

Petitioners alternatively contend that even if the Postponement Rule is not actually a stay of the 2015 Rule, then its relaxation of certain compliance dates is the "functional equivalent" of a stay, which the Clean Water Act does not authorize. But courts have rejected EPA delay actions undertaken without notice and comment rulemaking precisely because they recognize that the modification of effective dates is itself a rulemaking. *See, e.g., Envtl. Def. Fund v. Gorsuch*, 713 F.2d 802, 815–17 (D.C. Cir. 1983) (stating general rule that changes to effective dates constitute rulemaking and rejecting agency's argument that its decision not to call for hazardous waste permits from a whole class of facilities was a policy statement); *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 n.28 (D.C. Cir. 1981); *Env't Def. Fund, Inc. v. EPA*, 716 F.2d 915, 920 (D.C. Cir. 1983) ("[S]uspension or delayed implementation of a final regulation normally constitutes substantive rulemaking under APA § 553."). As the Second Circuit explained, "altering the effective date of a duly promulgated standard could be, in substance, tantamount to an amendment or rescission of the standards." *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 194 (2d Cir. 2004).[11] Courts have rebuked EPA delays as illegitimate where

---

[11] Intentionally delaying implementation of a duly promulgated rule may be analogous to an agency's issuing a rule that is inconsistent with a prior rule. In the latter situation, the D.C. Circuit, quoting Judge Easterbrook, holds that such a rule is necessarily a revision of the prior rule, which is permissible as long as pursued through the appropriate administrative processes:

It is a maxim of administrative law that: "If a second rule repudiates or is irreconcilable with [a prior legislative rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." Michael Asimow, *Nonlegislative Rulemaking and Regulatory Reform*, 1985 Duke L.J. 381, 396. Judge Easterbrook has lucidly explained why in such circumstances notice and comment rulemaking must be followed: A *volte face . . .* may be an attempt to avoid the notice and opportunity

the agency did *not* go through notice and comment procedures.  *See, e.g., Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 98, 113–14 (2d Cir. 2018); *Air Alliance Houston,* 906 F.3d at 1065 ("EPA may not employ delay tactics to effectively repeal a final rule while sidestepping the statutorily mandated process for revising or repealing that rule on the merits") (citation omitted); *Clean Air Council,* 862 F.3d at 9 (agency "issuing a legislative rule is itself bound by the rule until that rule is amended or revoked" and "may not alter [that rule] without notice and comment").  EPA obviated the Petitioners' complaint because the way in which it modified the 2015 Rule *is* a rulemaking that *may* properly issue after notice and comment.

## B.  Whether the Postponement Rule complied with the APA.

Petitioners do not prevail by describing the Postponement Rule as a stay or something other than a notice-and-comment rulemaking.  They next assert that "[d]espite citing the Clean Water Act provisions for issuing or revising effluent limitations as the authority for the [Postponement] Rule, EPA failed to consider all of the factors that the statute requires to be considered when promulgating effluent limits."  They point to the various statutory factors that

---

for comment that the Administrative Procedure Act requires for the alteration of a rule.  When an agency gets out the Dictionary of Newspeak and pronounces that for purposes of its regulation war is peace, it has made a substantive change for which the APA may require procedures.  If in the air bags case, *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983), instead of repealing the rule the agency had proclaimed that an ordinary seat belt is a "passive restraint", the Court would have treated this the same as it treated revocation of the rule.  Both require notice, an opportunity for comment, and an adequate record.  *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 412 (7th Cir.1987).

*Nat'l Fam. Planning and Reprod. Health Ass'n., Inc. v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992).

must govern BAT findings that undergirded the ELGs in the 2015 Rule.[12] They contend that because EPA failed to repeat, restate, re-evaluate and re-explain each of those "mandatory" factors, its Postponement Rule was invalid as "in excess of statutory authority" pursuant to the APA, 5 U.S.C. § 706(2). We disagree.

In this rulemaking proceeding, EPA revised only a subset of the 2015 Rule in response to serious issues raised about the availability and achievability of those particular regulations. The agency sought to avoid imposing potentially needless compliance costs, carefully considered which portions of the Rule to revise, and ultimately chose to modify only the earliest compliance dates for only two of the wastestreams. As EPA emphasizes, all of the relevant statutory factors were considered in the 2015 Rule. *See, e.g.*, EPA, Technical Development Document for the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, Index. 12840, at 8-6 to 8-25 (discussing evidence in the record on each of the statutory factors for BAT) (Sept. 2015); 80 Fed. Reg. at 67,846–47, 67,854–56, 67,863–69 (same). All of the findings were incorporated in the administrative record for the Postponement Rule. *See* Administrative Record Index, Mar. 19, 2018, ECF No. 00514391502. Finally, EPA expressly identified the Postponement Rule as a follow-on rulemaking to the 2015 Rule. In large part, the Postponement Rule repeats the substance of the 2015 Rule.

Moreover, EPA has significant discretion to weigh the statutory factors and re-evaluate the policy arguments supporting the rule. *See Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (stating that "a

---

[12] The CWA requires that BAT be based on a consideration of "the age of equipment and facilities involved, the process employed, the engineering aspects of the application of various types of control techniques, process changes, the cost of achieving such effluent reduction, non-water quality environmental impact (including energy requirements), and such other factors as the Administrator deems appropriate." 33 U.S.C. § 1314(b)(2)(B).

reevaluation of which policy would be better in light of the facts" is the "kind of reevaluation [that] is well within an agency's discretion" even when the agency "offered no new evidence to support its decision"); *id.* at 1043 (recognizing that "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations" (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 59 (Rehnquist, J., concurring in part and dissenting in part)). The CWA allows the Administrator discretion, in addition to applying the other enumerated factors, to consider "other factors as the Administrator deems appropriate." 33 U.S.C. § 1314(b)(2)(B). The "other factor" deemed important here had to do with the 2015 Rule's technology: "serious concerns about the availability and affordability of the technology basis for the FGD wastewater and bottom ash transport water requirements in the 2015 [ELG] Rule" were "important issues that warrant further consideration." Postponement Rule, 82 Fed. Reg. at 43,496–97.

Under these circumstances, EPA violated no statutory command by revising a small portion of the 2015 Rule pursuant to transparent, careful and targeted study. The agency supplied a reasoned basis for its decision to postpone two earliest compliance dates for the two specific waste streams, while retaining not only the ultimate compliance deadline specified in the 2015 Rule for those waste streams but practically the entirety of the 2015 Rule itself. The agency supplied a reasoned basis for its action, and accomplished the revision using "the same procedures when they amend[ed] . . . a rule as they used to issue the rule in the first instance." *Perez,* 135 S. Ct. at 1206. This court may not substitute our judgment for that of the agency. *Volpe,* 401 U.S. at 416, 91 S. Ct. at 824.

No. 18-60079

**C. Whether the Postponement Rule complies with 33 U.S.C. § 1311(b)(2).**

Petitioners' last contention is that the Postponement Rule violates what they assert is a mandatory maximum three-year compliance deadline for any BAT effluent limitations promulgated under the CWA.  The CWA requires that "there shall be achieved . . . compliance with [BAT] effluent limitations . . . as expeditiously as practicable but in no case later than three years after the date such limitations are promulgated . . . , and in no case later than March 31, 1989."   33 U.S.C. § 1311(b)(2)(C).[13]   Petitioners argue that this provision forbids EPA from extending compliance dates for *any* BAT effluent limitations beyond three years from the date of promulgation.  Since the BAT effluent limitations in the 2015 Rule were promulgated on November 3, 2015, the deadline by this reckoning would be November 3, 2018.  In its own terms, of course, the Postponement Rule extends the earliest compliance dates to November 1, 2020, which would run afoul of Petitioners' interpretation.

EPA argues that this statutory language dealt only with the *initial* promulgation of BAT effluent limitations, and the agency retains discretion to set compliance dates for any BAT subsequent effluent limitations.  We agree with the agency.  The plain text of the statute indicates that the three-year compliance deadline refers only to promulgation of the initial BAT effluent limitations.[14]  The "in no case later than three years" language is modified by

---

[13] Subsections (D) and (F) include identical language.

[14] Because the text is clear, there is no occasion here for deference to the administrative agency's reading of the statute under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).  Under "step one" of *Chevron*, courts analyze the statutory text for ambiguity.  *Id.* at 843–44, 104 S. Ct. at 2781–82.  If the text is ambiguous, courts defer to the agency's reasonable interpretation of the statute.  *Id.*  But if the meaning of the law is clear – if there is no ambiguity – this court applies the law without deference to the agency.  *See Luminant Generation Co. v. EPA*, 714 F.3d 841, 850–52 (5th Cir. 2013).

the deadline "and in no case later than March 31, 1989."  Petitioners' reading of the statute is absurd, as it is impossible to require compliance with BAT effluent limitations *both* within three years of the 2015 Rule *and* by March 31, 1989.  EPA's reading of the text accords the language its natural meaning:  the initial BAT effluent limitations were to be complied with as expeditiously as practicable, but in no case later than three years after promulgation, with a final compliance date of March 31, 1989 at the latest.  Regulated parties had to comply with EPA's initial BAT effluent limitations either within three years of promulgation or by March 31, 1989 – whichever came first.  This reading is supported by § 1311(d), which requires EPA periodically to review BAT limitations, including after 1989, but contains no such compliance deadline.  *See* 33 U.S.C. § 1311(d) ("Any effluent limitation required by paragraph (2) of subsection (b) of this section shall be reviewed at least every five years and, if appropriate, revised pursuant to the procedure established under such paragraph.").  And Petitioners must concede that, contrary to their argument, even the 2015 Rule allowed for compliance dates later than three years after it first took effect.

Petitioners' additional contentions are unavailing.  First, Petitioners argue that the statutory purposes and legislative history suggest that reading a three-year compliance requirement even after 1989 would be most consistent with the CWA's "overall goal to eliminate all discharges of pollution into navigable waters."  Pretermitting the propriety of this reading,  courts cannot resort to statutory purposes and legislative history and set aside the plain meaning of the statute.  Second, Petitioners cite *Chem. Mfrs. Ass'n v. EPA*, 870 F.2d 177, 242 (5th Cir.), *clarified on reh'g*, 885 F.2d 253 (5th Cir. 1989), for the proposition that the three-year statutory deadline is mandatory, and EPA's discretion extends only to deciding how to enforce the deadline.  But that case

concerned only a challenge to the original 1989 deadline, and did not address whether the statute also required maximum three-year compliance deadlines for any BAT effluent limitations promulgated thereafter. Petitioners identify no case law in support of their atextual interpretation. Finally, Petitioners suggest that the CWA's system of periodic review and revision would be meaningless without mandatory deadlines for compliance. But it was not meaningless for Congress to require three-year compliance deadlines for the initial promulgation of BAT effluent limitations, given the pressing need for regulation at that time. Even without specific Congressional direction, EPA has not been powerless in setting appropriate compliance deadlines for later revised BAT effluent limitations.

## CONCLUSION

In response to new information provided to it about the availability and achievability of a subset of regulations contained in a previously-promulgated rule, EPA revised its prior rule by changing only the earliest compliance dates applicable only to that subset of the regulations which had the potential to impose needless compliance costs. EPA engaged in incremental and targeted rulemaking following a period of notice and comment. In the end, most elements of the prior rule remained intact. EPA had statutory authority to pass this tailored Postponement Rule, the agency provided a reasoned basis for its decision, and its decision was reasonable, not arbitrary or capricious. The petition for review is **DENIED**.

14