# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 29, 2024

Lyle W. Cayce
Clerk

_____

No. 24-60231

_____

AIRLINES FOR AMERICA; ALASKA AIRLINES, INCORPORATED;
AMERICAN AIRLINES, INCORPORATED; DELTA AIR LINES,
INCORPORATED; HAWAIIAN AIRLINES, INCORPORATED;
JETBLUE AIRWAYS CORPORATION; UNITED AIRLINES,
INCORPORATED; NATIONAL AIR CARRIER ASSOCIATION;
INTERNATIONAL AIR TRANSPORT ASSOCIATION,

*Petitioners*,

*versus*

DEPARTMENT OF TRANSPORTATION,

*Respondent*.

_____

Appeal from the Department of Transportation, National Transportation
Safety Board
Agency No. 89 Fed. Reg. 34,620

_____

Before HAYNES, WILLETT, and DUNCAN, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

Several airlines and airline associations seek a stay pending review of
a recent Department of Transportation ("DOT") Rule that regulates how
airlines disclose fees to consumers during the booking process. Finding the

Rule likely exceeds DOT's authority and will irreparably harm airlines, we GRANT the requested stay and EXPEDITE the petition for review.[*]

## I.

On April 30, 2024, DOT issued a Rule regulating how airlines communicate certain fees to customers during the booking process. *See Enhancing Transparency of Airline Ancillary Service Fees*, 89 Fed. Reg. 34,620 (Apr. 30, 2024) ["Rule"]. The Rule dictates when and how airlines must disclose "ancillary service fees"—generally speaking, baggage or change fees.[1] The goal is to streamline booking and protect consumers from surprise charges. *See id.* at 34,620. DOT estimates the Rule will create net societal benefits between $30.3 million and $253.5 million and save consumers $543 million per year. *Id.* at 34,668–69. The Rule took effect July 1, 2024. Airlines must provide fee data to third-party ticket agents by October 30, 2024, and their own platforms must comply with the Rule by April 30, 2025. *Id.* at 34,667.

On May 31, 2024, various airlines and airline associations ("Petitioners") asked DOT to stay the Rule while it sought review. When DOT declined, Petitioners challenged the Rule in our court and sought a stay pending review under 5 U.S.C. § 705. Petitioners argue the Rule (1) exceeds DOT's authority; (2) is arbitrary and capricious; and (3) wrongly bypassed notice and comment.

---

[*] JUDGE HAYNES would grant expedited appeal. With respect to the request for a stay of the Rule, as a member of the motions panel, she would grant a temporary administrative stay for a brief period of time and defer the question of the stay pending appeal to the oral argument merits panel which would receive this case.

[1] *See id.* at 34,621 (defining ancillary services as "(1) transporting a first checked bag, second checked bag, and carry-on bag; and (2) changing or canceling a reservation"); *see also* 14 C.F.R. § 399.85 (codifying requirements).

## II.

We evaluate a stay request by considering:

(1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). Factors one and two are the "most critical." *Ibid.*

## A.

On the first factor, Petitioners make a strong showing that the Rule exceeds DOT's authority.[2]

The relevant statute authorizes the DOT Secretary to:

[I]nvestigate and decide whether an air carrier . . . has been or is engaged in an unfair or deceptive practice or an unfair method of competition in . . . the sale of air transportation.

49 U.S.C. § 41712(a). If the Secretary "finds" the carrier has done so, "after notice and an opportunity for a hearing," then "the Secretary shall order the air carrier . . . to stop the practice or method." *Ibid.* By its terms, then, the statute authorizes DOT to adjudicate whether certain practices are "unfair or deceptive" and, if so, to order the carrier to "stop" them.

The Rule goes far beyond adjudication, however. It mandates, often in great detail, a host of disclosure practices. *See generally* 89 Fed. Reg. at 34,621 (summarizing provisions). For instance, fees must be disclosed at a specific stage in a customer's "itinerary search process"—"the first point

―――――――――――――――――――

[2] So, we need not address Petitioners' other challenges to the Rule.

where a fare and schedule is provided in connection with a specific flight itinerary." *Ibid.* Fees may be displayed "using pop-ups, expandable text, or other means," but not "through a hyperlink." *Ibid.* Some disclosures must convey specified content.[3] Sometimes that content is prescribed verbatim.[4]

As Petitioners correctly put it, "[t]he Rule doesn't just prohibit—it prescribes." And it does so outside the adjudicatory process set out by § 41712(a). That is, the Secretary does not purport to "find," following "notice and . . . a hearing," that a carrier's online sale "practice" is "unfair or deceptive" and then order a carrier to "stop" it. *See* 49 U.S.C. § 41712(a). Rather, the Rule essentially enacts a code of online disclosure practices. That is not authorized by the statute. *See, e.g.*, *Clean Water Action v. United States Env't Prot. Agency*, 936 F.3d 308, 313 n.10 (5th Cir. 2019) ("[A]gencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions.").

If Congress wanted to authorize this kind of legislative rulemaking, it could have drawn on language from other provisions. *Cf.* 49 U.S.C. § 40103(b)(2) (authorizing Federal Aviation Administration to "*prescribe air traffic regulations* on the flight of aircraft"); *id.* § 44903(b) (authorizing Transportation Security Administration to "*prescribe regulations* to protect passengers and property . . . against an act of criminal violence or

---

[3] *See, e.g.*, *ibid.* (requiring disclosures in response to a "passenger-specific itinerary search" to incorporate "frequent flyer," "military," and "credit card" status); *ibid.* (disclosures must include "first checked, second checked, or carry-on baggage fees" absent special circumstances).

[4] *See id.* at 34,676 (mandating "the following notice on any page or step of the booking process" where customers can pay for a seat). This is the required notice: "A seat is included in your fare. You are not required to purchase a seat assignment to travel. If you decide to purchase a ticket and do not select a seat prior to purchase, a seat will be provided to you without additional charge when you travel." *Ibid.*

aircraft piracy") (emphases added). But such language is found nowhere in § 41712(a), indicating Congress did not confer that authority on DOT here. *See Polselli v. IRS*, 598 U.S. 432, 439 (2023) ("We assume that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another section of the same Act.") (cleaned up).

DOT's defense of the Rule fails to grapple with § 41712(a)'s text. Instead, the agency points to a general provision authorizing the Secretary to "take action [he] . . . considers necessary to carry out" his duties, "including conducting investigations, *prescribing regulations*, standards, and procedures, and issuing orders." 49 U.S.C. § 40113(a) (emphasis added). That does not help DOT's argument. As we have held before, "[t]he grant of authority to promulgate 'necessary' regulations cannot expand the scope of the provisions the agency is tasked with 'carrying out.'" *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 465 (5th Cir. 2020). Reading the catch-all authority in § 40113(a) to justify the Rule would obliterate the directly applicable textual limits spelled out in § 41712(a).[5]

DOT then pivots to the agency's "history" of promulgating regulations under § 41712, pointing to a handful of rules issued since 1982. That argument also fails. The Supreme Court has rejected the theory that agency practice can defeat a statute's text by "adverse possession." *Rapanos*

---

[5] DOT also points to 49 U.S.C. § 46301(a), which imposes civil penalties for violating a laundry list of provisions across 13 chapters, including § 41712, and also for violating "a regulation prescribed" under any of those provisions. *See* 49 U.S.C. § 46301(a)(1)(A), (B). But § 46301(a)—which references numerous provisions besides § 41712—says nothing about whether § 41712(a) in particular authorizes legislative rulemaking. And the fact that § 46301(a) references provisions that expressly authorize such rulemaking (*see, e.g.*, 49 U.S.C. §§ 40103(b) and 44903(b)) only underscores that § 41712(a) does not.

*v. United States*, 547 U.S. 715, 752 (2006); *see also Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, 98 F.4th 220, 241 (5th Cir. 2024) ("[Agencies'] near-exclusive reliance on agency custom is irreconcilable with the judicial obligation to interpret the statute that Congress actually enacted.").[6]

Finally, DOT relies on *United Air Lines, Inc. v. C.A.B.*, 766 F.2d 1107 (7th Cir. 1985), where a sister circuit construed the precursors to §§ 41712(a) and 40113(a) to confer legislative rulemaking power. *Id.* at 1111–12. We find *C.A.B.* unpersuasive for several reasons. First, while recognizing that § 41712(a) "creates an adjudicative procedure," *C.A.B.* failed to draw the natural inference, well established in our canons of statutory construction,[7] that the section therefore *excludes* legislative rulemaking. *Id.* at 1111. Second, *C.A.B.* reasoned that the agency's "history" of issuing such regulations somehow confirmed its authority to do so. *Id.* at 1111–12. We have rejected that reasoning. *See Career Colleges*, 98 F.4th at 241. Finally, *C.A.B.* relied on legislative history to prove that Congress expected DOT to continue its predecessor's practice of issuing legislative rules. 766 F.2d at 1112 (citing H.R. Rep. No. 793, 98th Cong., 2d Sess. 4 (1984)). "But legislative history is not the law," *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018)), nor can it "muddy clear

---

[6] We also disagree with DOT that Congress "ratified the Department's authority to prescribe practices under § 41712." In the examples DOT cites, Congress did not address the Secretary's authority to promulgate the Rule. *See* H.R. 3935, 118th Cong. tit. V, subtitle A, § 513(a), (b)(3). That is why DOT's brief claims only that "Congress . . . *did not question* . . . the Department's authority to issue [the Rule]." Red Br. at 8 (emphasis added). But "congressional silence lacks persuasive significance . . . particularly where administrative regulations are inconsistent with the controlling statute." *Brown v. Gardner*, 513 U.S. 115, 121 (1994) (citations omitted).

[7] *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("The expression of one thing implies the exclusion of others").

statutory language." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011); *see also United States v. Nazerzadeh*, 73 F.4th 341, 347 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 396 (2023) (where a text is unambiguous, "we are not permitted to look to the legislative history") (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 492 (5th Cir. 2004)).

In sum, Petitioners have made a strong showing that the Rule exceeds the agency's authority under 49 U.S.C. § 41712(a).

## B.

Petitioners meet the remaining *Nken* factors.

Petitioners have submitted ample evidence detailing the irreparable harm they will suffer absent a stay. For instance, they will have to expend significant resources reengineering their websites to comply with the Rule. *See Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) ("[T]he nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm."); *Career Colleges*, 98 F.4th at 236 ("[a]lleged compliance costs need only be more than de minimis") (quotation omitted). DOT suggests Petitioners have not shown that these harms are irreparable, but "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment)). And there does not appear to be any way Petitioners could recover their compliance costs.

"The balance-of-harms and public-interest factors merge when the government opposes an injunction." *Career Colleges,* 98 F.4th at 254. Petitioners have shown they are likely to suffer significant and irreparable harm from the Rule. That Rule likely goes well beyond the authority Congress has given DOT, and "there is generally no public interest in the

perpetuation of unlawful agency action." *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

## III.

Petitioners' motion for stay of the Rule pending review is GRANTED and the petition is EXPEDITED to the next available oral argument panel.